**ELKAY MANUFACTURING COMPANY, Plaintiff–Appellee,**

v.

**EBCO MANUFACTURING COMPANY and Ebtech Corporation, Defendants–appellants.**

**Nos. 98–1596, 99–1276.**

United States Court of Appeals, Federal Circuit.

Sept. 15, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 5, 1999.

Berton Scott Sheppard, Leydig, Voit & Mayer, Ltd., of Chicago, Illinois, argued for plaintiff-appellee. With him on the brief were Charles H. Mottier, Pamela J. Ruschau, and Christopher T. Griffith. Of counsel was Ali R. Sharifahmadian.

Darrel C. Karl, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendants-

appellants. With him on the brief was Donald R. Dunner.

Before RICH,* PLAGER, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Ebco Manufacturing Co. and Ebtech Corp. (collectively, Ebco) appeal the July 10, 1998 decision of the United States District Court for the Northern District of Illinois holding, after a bench trial, that Elkay Manufacturing Co.'s (Elkay's) U.S. Patent Nos. 5,222,531 (the '531 patent) and 5,289,855 (the '855 patent) were valid and infringed by Ebco and awarding damages to Elkay. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 1998 WL 397844 (N.D.Ill.1998). Ebco also appeals the court's February 5, 1999 supplemental judgment awarding Elkay additional infringement damages. Because we conclude that Ebco's accused devices do not infringe the asserted claims of these patents pursuant to a proper claim construction, we reverse the district court's infringement decision and consequently vacate the associated damages awards.

## BACKGROUND

The technology in this case concerns "no-spill" adapters for bottled water coolers that permit jugs of water to be inserted into coolers with the cap still on the bottle, thereby eliminating the potential problems of spilling or contaminating water when, for example, a bottle is inserted into a cooler. The accused devices, Ebco's WaterGuard I, II, and III no-spill adapters, comprise two concentric tubes designed and constructed so that water flows down the inner tube from the bottle into the cooler and air flows up into the bottle through the annular region formed by the two tubes.

Elkay sued Ebco, claiming that Ebco's WaterGuard devices infringed independent claims 1 and 7 of the '531 patent and claim

1 of the '855 patent, as well as dependent claims 2–4 and 8–10 of the '531 patent and claims 2–3 of the '855 patent. The '531 and '855 patents stem from the same genus. The '531 patent issued on June 29, 1993 from application Ser. No. 898,570 (the '570 application), which was filed as a continuation of application Ser. No. 684,642 (the '642 application). The '855 patent issued on March 1, 1994 from application Ser. No. 58,639 (the '639 application), which was filed as a separate continuation of the '642 application after the '531 patent was allowed.

Claim 1 of the '531 patent reads in part as follows:

1. A liquid container support and hygienic delivery system for dispensing drinking water or other potable liquid to a predetermined maximum liquid level in a dischargeable reservoir open at its upper end and housed within a cabinet from an inverted unpressurized container having an internal liquid confining surface defined by a substantially rigid, generally cylindrical body with a radially inwardly directed downwardly sloping shoulder portion merging into a generally cylindrical depending neck defining an opening closed by a coaxial cap circumferentially surrounding at least an outer axial portion of said neck and having an internal recess therein including a hollow tubular sleeve portion and a sealing plug portion defining a closed end with a central cavity having internal gripping means therein connected thereto, comprising, in combination,

. . . .

*an upstanding feed tube* dimensioned to penetrate into said hollow tubular sleeve portion of said coaxial cap and said container neck *to provide a hygienic flow path for delivering liquid*

---

* Circuit Judge Rich heard oral argument in this case, but died on June 9, 1999. This case was decided by the remaining judges in accordance with Fed. Cir. Rule 47.11.

*from* said inverted unpressurized container into said reservoir to said predetermined maximum liquid level *and for admitting air* from said reservoir above said liquid level *into said container* to displace the liquid delivered therefrom, said feed tube having upper and lower end portions, means carried by said removable mounting means for rigidly supporting said upstanding feed tube with said upper end projecting upwardly from said bottom end of said entry portion and said lower end depending downwardly from said bottom end of said entry portion of said removable mounting means into said reservoir to define said predetermined maximum liquid level, . . . .

(emphasis of disputed limitation added). Similarly, claim 7 of the '531 patent includes the limitation "an elongated feed tube . . . for admitting air into and dispensing drinking water . . . from within said . . . container," and claim 1 of the '855 patent includes the limitation "an upstanding feed probe . . . to provide a hygienic flow path for delivering liquid from . . . and for admitting air . . . into said container."

In interpreting these limitations, the district court stated that

the pertinent claim language uses the article "an" to delineate one feed tube or probe. "An" does not qualify or limit the path through which the air and water pass. . . . [T]he asserted claim language does not preclude a separation of the air and water flow or otherwise require the intermingling of air and water within the feed tube.

*Elkay*, 1998 WL 397844 at *12. Based on this construction, the court found that Ebco's WaterGuard no-spill adapters embodied these limitations through their use of concentric feed tubes and that the accused devices infringed the asserted claims of both patents, literally and under the doctrine of equivalents.

## DISCUSSION

"An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) *(en banc), aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction is a question of law that we review *de novo. See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir. 1998) *(en banc).* The determination as to whether the claims, as properly construed, read on the accused device presents an issue of fact that, following a bench trial, we review for clear error. *See Charles Greiner & Co. v. Mari–Med Mfg., Inc.,* 962 F.2d 1031, 1034, 22 USPQ2d 1526, 1528 (Fed.Cir.1992). A district court's infringement decision that is based on an improper claim construction is entitled to no deference when the correct construction of the claim is dispositive of the issue of infringement. *See Strattec Sec. Corp. v. General Automotive Specialty Co.,* 126 F.3d 1411, 1419, 44 USPQ2d 1030, 1036 (Fed.Cir. 1997).

In this case, the claim construction issue centers on "an upstanding feed tube . . . to provide a hygienic flow path for delivering liquid from . . . and for admitting air . . . into said container" limitation in claims 1 and 7 of the '531 patent and claim 1 of the '855 patent. We first discuss the proper construction of this limitation and then compare the properly construed claims to the accused WaterGuard devices. We conclude that the accused devices do not infringe the properly construed asserted claims either literally or under the doctrine of equivalents.

### A. Claim Construction

When construing a claim, a court should first look to the intrinsic evidence, *i.e.,* the patent itself, its claims, written

description, and, if in evidence, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996). The court may receive extrinsic evidence to educate itself about the invention and the relevant technology, but the court may not use extrinsic evidence to arrive at a claim construction that is clearly at odds with the construction mandated by the intrinsic evidence. *See Key Pharms. v. Hercon Lab. Corp.,* 161 F.3d 709, 716, 48 USPQ2d 1911, 1917 (Fed.Cir.1998). We begin with the '531 patent.

## 1. The '531 Patent

■ Claim construction begins with the words of the claim. *See Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 619–20, 34 USPQ2d 1816, 1819 (Fed.Cir.1995). We focus on the limitation "an upstanding feed tube ... to provide a hygienic flow path for delivering liquid from ... and for admitting air ... into said container" in claim 1 for convenience because our analysis does not vary concerning the corresponding limitation in claim 7.[1]

■ Ebco asserts that the normal, accepted meaning of the use of the articles "a" and "an" requires that the above-quoted limitation be construed as describing a single feed tube with a single path for both air and water. This contention goes too far. While the article "a" or "an" may suggest "one," our cases emphasize that "a" or "an" can mean "one" or "more than one," depending on the context in which the article is used. *See Abtox, Inc. v.*

*Exitron Corp.,* 122 F.3d 1019, 1023, 43 USPQ2d 1545, 1548 (Fed.Cir.1997) ("[T]he article 'a' suggests a single chamber. However, patent claim parlance also recognizes that an article can carry the meaning of 'one or more,' for example in a claim using the transitional phrase 'comprising.'") (*citing North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1575–76, 28 USPQ2d 1333, 1336 (Fed.Cir. 1993)).

The use of the articles "an" and "a" when referring to "feed tube" and "flow path," respectively, suggest a single feed tube with a single flow path for liquid and air. Other language in the claim similarly suggests a single flow path for both fluids. *See* '531 patent, col. 8, ll. 39–51 ("[S]aid feed tube having a length ... to permit the discharge of liquid from said container into said reservoir ... and admission of air from said reservoir above said liquid and into said container."). The asserted claims, however, use the open term "comprising" in their transition phrases. We therefore hold that the plain meaning of "an upstanding feed tube ... to provide a hygienic flow path for delivering liquid from ... and for admitting air ... into said container" is not necessarily limited to a single feed tube with a single flow path for both liquid and air. *See PPG Indus. v. Guardian Indus. Corp.,* 156 F.3d 1351, 1354, 48 USPQ2d 1351, 1353 (Fed.Cir. 1998).

We next turn to the written description of the '531 patent. Ebco asserts that the written description confirms that the feed tube must have a single flow path for air

---

1. Ebco argues that we should construe the following claim language:

 an upstanding feed tube ... to provide a hygienic flow path for delivering liquid from said inverted unpressurized container into said reservoir to said predetermined maximum liquid level and for admitting air from said reservoir above said liquid level into said container to displace the liquid delivered therefrom, ....

 Ebco asserts that the phrases "[delivering liquid from] said inverted unpressurized container into said reservoir to said predeter-

mined maximum liquid level" and "[admitting air from] said reservoir above said liquid level to displace the liquid delivered therefrom" are essential to properly construe the feed tube limitation. We recognize that claim limitations must be construed in context and do so in this case. These phrases, however, do not add context that affects our analysis of whether this limitation is properly interpreted to include more than one feed tube or flow path for liquid and air. Therefore, we do not focus on them.

and water. There are numerous references to "a feed tube" and "the feed tube" in the written description, *see, e.g.,* '531 patent at col. 5, ll. 9, 25, and 52–53, and the figures show a single feed tube with a single flow path for liquid and air, *see id.* at Figs. 1, 2, 4a–4c, 6, 7, and 10. Furthermore, the written description does not describe a no-spill adapter design incorporating separate feed tubes for liquid and air or a single feed tube with separate flow paths for liquid and air.

■■■ The written description, however, expressly states that it describes a preferred embodiment of the invention. *See id.* at col. 2, ll. 48–52 ("These and other features and advantages of the invention will be more readily apparent upon reading the following description of a preferred exemplified embodiment of the invention....."). "The general rule, of course, is that the claims of a patent are not limited to the preferred embodiment, unless by their own language." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 973, 50 USPQ2d 1465, 1469 (Fed. Cir.1999). The written description thus does not conclusively establish that the meaning of "an upstanding feed tube ... to provide a hygienic flow path for delivering liquid from ... and for admitting air ... into said container" is limited to a single feed tube with a single flow path for liquid and air.

■■■ We turn finally to the prosecution history of the '531 patent. "The prosecution history gives insight into what the applicant originally claimed as the invention, and often what the applicant gave up in order to meet the Examiner's objections." *Lemelson v. General Mills, Inc.,* 968 F.2d 1202, 1206, 23 USPQ2d 1284, 1288 (Fed.Cir.1992); *see also Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir. 1985) ("[T]he prosecution history (or file wrapper) limits the interpretation of claims

so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."); *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.,* 106 F.3d 1563, 1565, 41 USPQ2d 1641, 1642 (Fed.Cir.1997) ("The correct meaning of [the disputed] term is established by reading the prosecution history of the '584 patent. That is a legal exercise which we are obligated to conduct independently."). Ebco asserts that the prosecution history of the patents shows that Elkay gave up a construction of the feed tube/probe limitation that could include an apparatus with separate flow paths for liquid and air. We agree.

In an office action dated November 18, 1992, the Examiner rejected independent claims 16 and 22 of the '570 application (which correspond to claims 1 and 7, respectively, in the '531 patent) pursuant to 35 U.S.C. § 103, based on U.S. Patent No. 2,057,238 (Krug) in view of U.S. Patent No. Re 32,354 (Savage). Krug describes a beer dispensing apparatus with two separate feed tubes, one for pressurized air and one for beer.[2] Savage describes an apparatus that allows a liquid feed tube to be connected to a collapsible bag so that air is not introduced into the bag as the connection is made.

Elkay responded to this rejection by distinguishing Krug on the ground that, inter alia, Elkay claimed "*a flow path ... for delivering liquid ... and for admitting air*":

Krug has no reservoir open at its upper end as recited in the preamble of independent claims 16 and 22 and, more importantly therefore, cannot possibly teach or suggest ... *a flow path* (claim 16) or "fluid passage means" (claim 22) *for delivering liquid* from said inverted unpressurized container (claim 16) into said reservoir up to said predetermined maximum liquid level *and for admitting*

2. Krug shows a preferred embodiment in which the air feed tube is contained within the beer feed tube. This is similar to the feed tube arrangement in the accused devices, in which the water feed tube is contained within the air feed tube.

*air* from said reservoir above said liquid level into said container as recited in the body of each of applicants' independent claims 16 and 22.

(internal quotations omitted and emphasis added). Because Krug teaches the use of separate liquid and air feed tubes, when Elkay made this argument it necessarily relinquished a construction of its claim language that could include separate feed tubes. Consequently, Elkay cannot successfully argue now that the feed tube limitation in claims 1 and 7 is properly construed to include separate flow paths for liquid and air.

 Elkay asserts that it did not substantively amend the claim language concerning the structure of the feed tube in its response to the office action and that the focus of its response was on the lack of a reservoir in Krug and Savage. Elkay argues that this clearly demonstrates that the feed tube structure is not limited to a single passageway for both water and air. This argument is unpersuasive. Arguments made during the prosecution of a patent application are given the same weight as claim amendments. *See, e.g., Standard Oil,* 774 F.2d at 452, 227 USPQ at 296 ("[The prosecution history includes] all express representations made by or on behalf of the applicant to the examiner to induce a patent grant.... Such representations include amendments to the claims and arguments made to convince the examiner...."). Because it is the totality of the prosecution history that must be assessed, not the individual segments of the presentation made to the Patent and Trademark Office by the applicant, it is irrelevant whether Elkay relinquished this potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference. It is similarly irrelevant whether Elkay emphasized this argument at the time, or indeed whether Elkay had to relinquish an interpretation of the feed tube limitation that could cover more than one flow path for liquid and air. *See Bai v. L & L Wings,*

*Inc.,* 160 F.3d 1350, 1356, 48 USPQ2d 1674, 1678–79 (Fed.Cir.1998).

Elkay's argument that its statement distinguishing Krug on the basis of Krug's use of separate feed tubes was insignificant is particularly unpersuasive in view of the Examiner's response to that statement. In the Examiner's Statement of Reasons for Allowance, dated March 30, 1993, the Examiner wrote that he allowed claim 22 (*i.e.,* claim 7 in the '531 patent) because he understood the claim to describe a single feed tube with a single flow path for both liquid and air:

> In regard to claim 22, the prior art of record does not teach a container support with a removable mounting means and feed tube as claimed wherein the feed tube has a passage means which both dispenses liquid from the container into the reservoir and admits air from the reservoir into the container.... [Beer] feed tube 13 [in Krug] does not provide a means for admitting air. Note that Krug provides a separate conduit for exterior air $^{27}\!/_{34}$ in order to relieve the vacuum in container 6.

Elkay did not respond to this statement.

We conclude that during prosecution Elkay disavowed a potential interpretation of the feed tube limitations in claims 1 and 7 of the '531 patent that would include separate feed tubes or flow paths for liquid and air. Therefore, based on the claim language, the written description and the prosecution history, we hold that "an upstanding feed tube ... to provide a hygienic flow path for delivering liquid from ... and admitting air ... into said container" is properly interpreted to refer to a single feed tube with a single flow path for both liquid and air.

## 2. The '855 Patent

 The relevant portion of claim 1 of the '855 patent is identical to the above-quoted limitation in claim 1 of the '531 patent with the exception that the feed tube in the '531 patent is described as a feed probe in the '855 patent. *Com-*

*pare* '531 patent, col. 8, ll. 21–27 *with* '855 patent, col. 8, ll. 24–31. Hence, we reach the same conclusion regarding the plain meaning of this limitation as we do concerning the feed tube limitation in claim 1 of the '531 patent. In addition, the written description of the '855 patent is essentially identical to that of the '531 patent. We, therefore, again reach the same conclusion as with the '531 patent.

 When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation. *See Jonsson v. The Stanley Works*, 903 F.2d 812, 817–818, 14 USPQ2d 1863, 1868–69 (Fed.Cir.1990) (holding that when two patents issued from continuation-in-part applications derived from one original application, the prosecution history of a claim limitation in the first patent to issue was properly applied to the same claim limitation in the second patent to issue). The facts in the present case are even more compelling than in *Jonsson* for applying the prosecution history of the first issued patent to the second issued patent. Here, Elkay added new claims 26–28 during the prosecution of the '639 application, which issued as claims 1–3, respectively, in the '855 patent. In describing the claims, Elkay stated that "[n]ew claim 26 is patterned after a combination of claims 1, 3 and 5 of [the '531 patent] with the 'feed tube' changed to—feed probe—...." By making this statement, Elkay affirmatively linked the meaning of claim 26 of the '639 application to claims 1, 3, and 5 of the '531 patent. Because Elkay's statement put competitors on clear notice of that linkage and because the '531 and '855 patents stem from the same genus, it is proper to consider the prosecution history of claim 1 of the '855 patent to be an amalgam of the prosecution histories of both patents.

Consequently, we hold that Elkay's relinquishment of a potential construction of the feed tube limitation in claim 1 of the '531 patent to include separate feed tubes for liquid and air applies to the feed probe limitation in claim 1 of the '855 patent. Therefore, as with the '531 patent, we conclude that the feed probe limitation in claim 1 of the '855 patent is properly construed as referring to a single feed probe with a single flow path for both liquid and air.

### B. Comparing the Construed Claims to the Accused Devices

#### 1. Literal Infringement

 The literal infringement issue in this case centers on the feed tube/probe limitation of the asserted independent claims and the relevant structure of Ebco's WaterGuard I, II, and III no-spill adapters. "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211, 48 USPQ2d 1010, 1014–15 (Fed.Cir. 1998). Judgment as a matter of law of no literal infringement is appropriate if no reasonable fact finder could determine that the accused devices meet every limitation of the properly construed claims. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476, 45 USPQ2d 1498, 1500 (Fed.Cir.1998).

 As we have discussed, the feed tube/probe limitation in the asserted claims is properly construed to refer to a single feed tube/probe with a single flow path for both liquid and air. There is no dispute that the WaterGuard devices use separate feed tubes for water and air. Thus, no reasonable fact finder could determine that the accused devices meet every limitation of the properly construed claims of the '531 and '855 patents. Consequently, we reverse the district court's literal infringement decision and hold that Ebco is entitled to judgment as a matter of law concerning that issue.

### 2. Doctrine of Equivalents

Judgment as a matter of law of no infringement under the doctrine of equivalents is appropriate if no reasonable fact finder could determine that a claim limitation is met in the accused device by a substantial equivalent. *See Gentry Gallery*, 134 F.3d at 1476, 45 USPQ2d at 1500. "Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel." *Wang Lab., Inc. v. Mitsubishi Elecs.*, 103 F.3d 1571, 1578, 41 USPQ2d 1263, 1269 (Fed.Cir.1997) (citation omitted). Prosecution history estoppel prevents operation of the doctrine of equivalents from expanding a claim limitation to include subject matter surrendered during the patent's prosecution. *See id.; see also Bai*, 160 F.3d at 1354, 48 USPQ2d at 1677.

The prosecution history of the '531 patent shows that Elkay surrendered coverage of a separate feed tube or flow path for liquid and air in claims 1 and 7. Prosecution history estoppel therefore applies to prevent operation of the doctrine of equivalents to extend the coverage of those claims to include a separate feed tube or flow path for liquid and air.

We hold that Elkay's surrender of coverage of a separate feed tube or flow path for liquid and air also applies to the feed probe limitation in claim 1 of the '855 patent, based on the formal relationship between the '531 and '855 patents. and Elkay's express connection of claim 1 of the '855 patent to claim 1 of the '531 patent. Consequently, prosecution history estoppel applies to prevent operation of the doctrine of equivalents to extend the coverage of that claim to include a separate feed probe or flow path for liquid and air.

Because the accused devices use separate feed tubes for air and water, no reasonable fact finder could find that the feed tube/probe limitation in these claims is met equivalently in the accused devices. We therefore reverse the district court's deci-sion and hold that Ebco is entitled to judgment as a matter of law that the WaterGuard I, II, and III no-spill adapters do not infringe the asserted claims of the '531 and '855 patents under the doctrine of equivalents.

### CONCLUSION

For the reasons stated above, we reverse the district court's decision and hold that Ebco's accused WaterGuard I, II, and III no-spill adapters do not infringe the asserted claims of Elkay's '531 and '855 patents, either literally or under the doctrine of equivalents.

*REVERSED AND VACATED.*

### COSTS

Each party shall bear its own costs.