## GOLDTOUCH TECHNOLOGIES INC.,

v.

## MICROSOFT CORPORATION.

No. A 99 CA 336 SS.

United States District Court,
W.D. Texas,
Austin Division.

May 31, 2000.

James E. Geringer, J. Christopher Carraway, John D. Vandenberg, Klarquist Sparkman Campbell Leigh & Whinston, LLP, Portland, OR, David J. Beck, Eric J.R. Nichols, Jeffrey M. Golub, Beck Redden & Secrest, Houston, TX, for Microsoft.

Gary W. Hamilton, James W. Cannon, Jr., R. Laurence Macon, James Arbogast, Akin, Gump, Strauss, Hauer & Feld, LLP, Austin, TX, for plaintiffs.

### ORDER

SPARKS, District Judge.

BE IT REMEMBERED that on the 12th of May 2000, the Court held a hearing in the above-styled cause at which the parties appeared by representation of counsel and presented argument on the Plaintiffs' Motion for Partial Summary Judgment of Literal Infringement on the '553 Patent [# 69] and the Defendant's Motion for Summary Judgment of Noninfringement on Both Patents [# 75]. The Court now confirms the announcements made orally at the hearing with the following written order.

The plaintiffs' patent concerns an ergonomically superior computer mouse that minimizes the amount of stress placed on the user's fingers, wrist, and hand. The invention is intended to conform as closely as possible to the user's neutral hand position, which is also referred to as the position of repose. The plaintiff contends that the defendant's products—specifically the Intellimouse Pro and the Intellimouse Explorer—are infringing claims 1, 6–10, and 18–22 of the '683 patent as well as claim 42 of the '553 patent.

On January 14, 2000, the Court entered an order construing the claims of '683 patent. One area of dispute concerned the phrase "having a negative slope" from left to right. The parties disagreed whether the term should be defined to encompass an arch. The defendant proposed defining the phrase to mean "the entire top surface slopes downwardly from the left wall to the right wall so that no arch is present when viewed from the rear." The plaintiffs' proposed definition was "the top surface slants downward from left to right such that the highest point is left of center."

During the prosecution, the patent examiner distinguished the '683 patent from the prior art, specifically the Gart mouse. The examiner noted that although the Gart mouse had a negative slope on the top surface, the slope "is not entirely negative as shown in the present invention." *See* Joint Appendix ("JA") 122; *see also* JA 85 (claiming the Gart patent does not have a negative slope from left to right but a gentle sloping arch); JA 87 ("The Bacon mouse and the Kaneki mouse both have an arched top surface, not a top surface having a negative slope from left to right"). The examiner explained that "the negative slope claimed in the present invention is critical" to obtaining the positive results intended by the patent. Relying in large part on the prosecution history, the Court adopted the defendant's definition. *See Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

On December 21, 1999, the PTO issued the '553 patent, which is a continuation-in-

part of the '683 patent.[1] Claim 43 of the '553 patent discloses:

A computer mouse for operation, on an operating surface, by a right hand, the computer mouse comprising:

a bottom wall having an opening to accommodate a controlling device; a housing, joined to the bottom wall, including a top surface, a front surface, a right side surface and a left side surface;

the top surface having **negative slope from front to rear and from left to right** to support the right hand in a state of approximate repose with pronation in the range of approximately 10 degrees to approximately 45 degrees from the horizontal, while the heel of the right hand rests on the operating surface;

a **longitudinal peak running substantially left of center along the length of the mouse;** and

at least one button having negative slope *downward to the front and right.*

(Emphasis added). On January 18, 2000, the Court granted the plaintiff leave to file a third amended complaint that asserted claims based on the '553 patent.

The defendant urges the Court to apply the construction of "negative slope" in the '683 patent to the '553 patent. *See, e.g., Wang Lab., Inc. v. America Online, Inc.,* 197 F.3d 1377, 1384 (Fed.Cir.1999) (rejecting the patentee's argument that a statement made during the prosecution of the parent application should not apply to the continuation-in-part application); *Elkay Mfg. Co. v. EBCO Mfg. Co.,* 192 F.3d 973, 980 (Fed.Cir.1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation."); *Augustine Med. Inc. v. Gaymar Indus. Inc.,* 181 F.3d 1291,

1300 (Fed.Cir.1999) (using the prosecution history of a parent application to interpret and limit the scope of a continuation patent using the same term). This would entitle the defendant to a noninfringement finding because the summary judgment evidence establishes that the accused products do not contain an entirely negative slope, either from front to back or left to right.

The defendant also argues it is entitled to summary judgment because the accused products do not contain "a flattened surface adjacent to said one or more buttons ... such that the user's ring finger receives support from the flattened surface" as required by dependent claims 18 and 22 of the '683 patent, which the Court interpreted to require "a surface that is sufficiently flat, wide, and horizontal to support a user's ring finger without the finger touching the mouse button."

Finally, the defendant argues prosecution history estoppel precludes the plaintiff from prevailing under the doctrine of equivalents. *See Augustine Med., Inc.,* 181 F.3d at 1298 (describing the numerous principles that "strictly limit" the application of the doctrine of equivalents). Because the plaintiff relinquished coverage for a mouse with an arched surface in its arguments to the examiner, the defendant argues the plaintiff is precluded from reclaiming this feature under the doctrine of equivalents. *See Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1304 (Fed.Cir.1997) ("By distinguishing the claimed invention over the prior art, an applicant is indicating that the claims do not cover."). The defendant concludes it is entitled to summary judgment of noninfringement as to both the '683 and '553 patents.

The plaintiff criticizes the defendant's noninfringement arguments as being based on a "faulty claim construction." The plaintiff continues to argue that the phrase "top surface having a negative slope from

---

**1.** A continuation-in-part application contains subject matter from a prior application and may also contain additional matter not dis-

closed in the prior application. *See Augustine Med. Inc. v. Gaymar Indus. Inc.,* 181 F.3d 1291, 1302 (Fed.Cir.1999).

left to right" does not preclude the top surface from having an arch when viewed from the rear. The plaintiff argues the express terms of the '553 patent vitiate the Court's interpretation of the '683 patent. As mentioned above, claim 43 of the '553 patent requires a "longitudinal peak running substantially left of center along the length of the mouse." Claim 46 of the '553 patent recites:

> The computer mouse of claim 43, wherein the longitudinal peak runs along the length of the computer mouse, substantially from a forward juncture of said left side surface and said front surface, toward a rearward juncture of said top surface and said left side surface.

The plaintiff interprets claim 46 to require the longitudinal peak to be located on the extreme left edge of the top surface. Based on the doctrine of claim differentiation, the plaintiff argues that claim 43 permits the longitudinal ridge to be located somewhere between the extreme left edge of the top surface and substantially left of the center of the top surface, *See, e.g., Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed.Cir.2000) (noting that the doctrine of claim differentiation creates a presumption that each claim in a patent has a different scope). If the longitudinal ridge is placed anywhere to the right of the extreme left edge of the top surface, the mouse will not have an entirely negative slope from left to right and an arch will be present when the mouse is viewed from the rear. The plaintiff asserts that by granting claim 43 of the '553 patent, the examiner must have recognized that the surface of the invention described in both the '683 and the '553 patents did not require an entirely negative slope from left to right. Thus, the plaintiff concludes the Court's interpretation of negative slope is manifestly erroneous.

Alternatively, the plaintiffs argue the accused products infringe under the doctrine of equivalents. According to the plaintiffs, the negative slope from left to right provides pronation relief by placing the hand in a state of approximate repose. The plaintiffs argue the left to right slope of the accused products perform the same function and achieve the same result. Similarly, the plaintiffs argue the negative slope from front to back of the accused devices provides support to the palm and fingers in the same way and achieves the same result as the claimed inventions. The plaintiffs reject the defendant's prosecution history estoppel argument. The plaintiffs allege they distinguished the prior art Gart design on various grounds, including the apparent symmetry in the top surface. The plaintiffs argue it is inappropriate for the defendant to focus on just one of the bases given for distinguishing the Gart mouse instead of focusing on the combination of reasons.

The defendant replies by disagreeing with the plaintiff's proposed interpretation of claim 46. The defendant interprets claim 46 as describing where the longitudinal peak starts and ends rather than telling where it is located with reference to the center of the top surface of the mouse.

■ The Court finds the defendant is entitled to summary judgment on noninfringement as to both the '683 and the '553 patents based on the prosecution history of the '683 patent. Although the prosecution history of the '683 was detailed in the Court's previous claims construction order, it is helpful to repeat that history here. In October 1996, the PTO rejected the plaintiff's application based in part on the prior art—the Gart mouse, the Bacon mouse, the Kaneko mouse, and the Maynard mouse. *See* JA 77–78. In January 1997, the plaintiff filed an amendment addressing the examiner's concerns. *See* JA 81–89, The plaintiff argued that "the top surface of the Gart mouse does not have a negative slope from left to right" as recited in the plaintiff's claims, but a gentle, clearly distinctive arch. *See* JA 85. The plaintiff distinguished the Bacon, Kaneko, and Maynard mice on the same grounds. *See* JA 87 ("The Bacon mouse and the Kaneko

mouse both have an arched top surface, not a top surface having a negative slope from left to right.").

In March 1997, the PTO again rejected the plaintiff's application in view of the prior art. *See* JA 99–104. The examiner found the slope of the Gart mouse from left to right in the range of 20 to 30 degrees to be "negative enough" to preclude the plaintiff's application. *See* JA 102. In April 1997, the plaintiff submitted another amendment, which was rejected by the PTO. *See* JA 112.

On May 21, 1997, the plaintiff had a personal interview with the examiner to discuss all pending claims. In the record of the interview, the examiner described the general nature of the meeting: "Applicant and his representative discussed the difference between the instant invention and the prior art device (including the negative slope from left to right and the curved bottoms) and the criticality of these features for operation of the invention." JA 113.

In its summary of interview and request for reconsideration, the plaintiff emphasized that its invention requires a negative slope from left to right in a range of 20 to 30 degrees in contrast to the Gart patent, which shows a top surface with a negative slope from center to right but a positive slope from left to center. *See* JA 117. The examiner subsequently issued an amendment which permitted certain of the plaintiff's claims. The examiner noted that although the Gart mouse had a negative slope on the top surface, the slope "is not *entirely* negative as shown in the present invention." *See* JA 122 (addressing Figure 2 of the plaintiff's invention) (emphasis added). The examiner explained that "the negative slope claimed in the present invention is critical" to obtaining the positive results intended by the patent.

After considering the prosecution history, the Court confirms its earlier determination that the term "negative slope" requires an entirely negative slope. The plaintiff avoided the prior art before the examiner by claiming the slope was entirely negative from left to right and should not be permitted to change those representations now. If the plaintiff disagreed with the examiner's characterization of the invention as having an entirely negative slope, then the plaintiff had an obligation to correct it.[2] *See Elkay Mfg. Co.*, 192 F.3d at 979 (adopting the examiner's construction when the patentee failed to respond to the examiner's statement of allowance). The plaintiff will not be permitted to benefit from the examiner's characterization and then try to disclaim that characterization in the above-styled cause. The Court is unpersuaded by the plaintiff's argument that if the examiner intended the term "negative slope" to mean an *entirely* negative slope, the examiner would have required an amendment to the claim language. *See id.* (rejecting a patentee's argument that certain subject matter was not disclaimed because it did not result in a substantive amendment of the claim language).

The issuance of the '553 patent does not alter the Court's conclusion. Contrary to the plaintiff's argument, the newly added element of "a longitudinal peak running substantially left of center along the length of the mouse" does not compel the Court to interpret the phrase "negative slope from left to right" to mean that the highest point on the top surface of the mouse is left of center. As the plaintiff has pointed out previously during this litigation, the subject of the '683 and the '553 is a computer mouse with a rounded construction. For this reason, although the claim recites a top surface, a front surface, a left side surface and a right side surface, the precise juncture of these surfaces is difficult pinpoint. The examiner might have permitted the addition of the longitudinal

---

2. The record reveals that the plaintiff did file a comment on the examiner's reasons for allowance, but failed to address the examiner's conclusion that the plaintiff's invention had an entirely negative slope. *See* JA 131–32.

peak element in recognition of the mouse's somewhat ·amorphous boundaries, such that the placing of the longitudinal peak "substantially" left of center would still result in an entirely negative slope on the top surface of the mouse.

Nevertheless, the reason for the allowance of claim 43 of the '553 patent is not clear from the prosecution history. The examiner of the '553 did not expressly address the "negative slope" element or its relationship to the "longitudinal peak" element. Under these circumstances, the plaintiff remains bound by the Court's interpretation of the prosecution history of the '683 patent. During that prosecution, the plaintiff disclaimed an arched top surface. Although the plaintiff now argues it only disclaimed a *symmetrical* arched top surface, its written correspondence with the examiner and the PTO does not reflect this distinction. The Court finds the presumption of claim differentiation between claims 43 and 46 of the '553 patent is overcome by the prosecution history of the '683 patent. *See Kraft Foods Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed.Cir.2000) (finding the written description and prosecution history overcame any presumption arising from the doctrine of claim differentiation); *Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1384 (Fed.Cir.1999) ("[T]he doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence."). Because the summary judgment evidence establishes the accused products do not contain an entirely negative top

surface, either from left to right or front to back, the defendant is entitled to summary judgment of no literal infringement.[3]

 The defendant is also entitled to summary judgment of no infringement under the doctrine of equivalents.[4] The plaintiff is precluded from reclaiming an arched surface because of its prior representations to the PTO. Prosecution history estoppel prevents a patentee from recapturing subject matter it surrendered during prosecution of the patent. *See Augustine Med., Inc.*, 181 F.3d at 1298. To determine the scope of estoppel, the Court considers whether a competitor would reasonably conclude that an applicant's prosecution had surrendered the disputed subject matter. *See id; see also Spectrum Int'l Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed.Cir.1998) (explaining that the public has a right to rely on definitive statements made by the applicant during prosecution). Both amendments to the patent application and arguments made by the applicant may be the basis for estoppel. *See id.* After making a close examination of what was surrendered as well as the reasons for the surrender, the Court determines that a competitor would have reasonably concluded that the plaintiff surrendered an arched top surface in light of the plaintiff's representations to the examiner during the prosecution of the '683 patent. *See Southwall Techs., Inc.*, 54 F.3d at 1580. Thus, the plaintiff is precluded from reclaiming an arched top surface through the doctrine of equivalents in light of the prosecution history—specifically the statements made by the plaintiff during the prosecution, as well as the ex-

---

**3.** Alternatively, the defendant is entitled to summary judgment of no literal infringement on claims 18–21 of the '683 patent because the accused products do· not contain a flattened surface adjacent to the buttons that provides support for the user's ring finger. The summary judgment evidence establishes that the buttons on the accused products extend across the entire width of the top surface. As a practical matter, this precludes a flattened surface adjacent to the buttons. Based on the Court's claim construction, the

right side wall of the accused devices, which is substantially vertical, does not meet this element.

**4.** "An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents if 'it performs substantially the same function in substantially the same way to obtain the same result.'" *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed.Cir.1995).

aminer's statements regarding the scope of the prior art. *See id.* at 1299 ("[A] patentee is estopped from recovering through equivalency that which was deemed unpatentable in view of the prior art.").

In accordance with the foregoing, the Court enters the following orders:

IT IS ORDERED that the Plaintiff's Motion for Partial Summary Judgment of Literal Infringement of the '553 Patent [# 69] is DENIED;

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment of Noninfringement on Both Patents (# 75) is GRANTED;

IT IS FURTHER ORDERED that the Plaintiff's Motion for Reconsideration is DENIED; and

IT IS FINALLY ORDERED that all other pending motions are DISMISSED AS MOOT.