**John B. ADRAIN, Plaintiff–Appellant,**

v.

**HYPERTECH, INC., Defendant–Appellee.**

No. 02–1514.

United States Court of Appeals, Federal Circuit.

DECIDED: June 24, 2003.

Rehearing Denied July 18, 2003.

Before LOURIE, RADER, and DYK, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the District of Utah determined on summary judgment that Hypertech, Inc. did not in-

fringe Mr. Adrain's U.S. Patent No. 5,523,-948 (the '948 patent). The parties stipulated to that result after the District Court construed the claims to include an "in transit" limitation. Because the district court improperly imported the "in transit" limitation into the claims, this court *reverses* that part of the district court's claim construction as well as the judgment of non-infringement and *remands* the case for further proceedings consistent with this opinion.

# I.

Mr. Adrain filed suit against Hypertech alleging, inter alia, that Hypertech's Power Programmer products infringe claims 1, 5, and 19 of the '948 patent. The '948 patent is a continuation-in-part of U.S. Patent No. 5,446,665 (the '665 patent), which is a continuation of U.S. Patent No. 5,293,317 (the '317 patent), which is a continuation of U.S. Patent No. 5,200,900 (the '900 patent). The '948 patent claims improvements in the operation of engine control modules in automobiles. These modules function as onboard computers to control various vehicle functions. The claims at issue read:

*Claim 1:*

An improvement in a vehicle having a predetermined combination of operational elements for controlling vehicular operation according to at least one originally provided program, said predetermined combination of operational elements being defined in a fixed system having a bus with a predetermined operable design for operation of said vehicle, said operational elements of said system being controlled by an electronic control module according to said originally provided program, said electronic control module being coupled to said bus and exteriorly accessible for at least diagnostic purposes, said improvement comprising:

a module externally coupled to said bus for arbitrarily reconfiguring a programmed control of said electronic control module in which said electronic control module is employed, said module for use in selecting at least one additional operational protocol not originally included within said fixed system design, said module comprising: at least one preprogrammed memory, said preprogrammed memory for storing at least one additional program for use in controlling operation of said vehicle in a distinguishable protocol in addition to those provided by said originally provided program and in lieu of control provided by said originally provided program; and a control coupled only to said preprogrammed memory for selectively communicating said preprogrammed memory to said electronic control module, operation of said vehicle being changed by said control according to said additional program in said selected preprogrammed memory in lieu of said originally provided program,

whereby said vehicle is caused to operate in a protocol selected from at least one alternative available in said preprogrammed memory.

'948 patent, col. 6, I. 55—col. 7, I. 22.

*Claim 5:*

The improvement of claim 1 wherein said control comprises means for erasing said originally provided memory and writing a new program into said originally provided memory from said at least one preprogrammed memory.

'948 patent, col. 7, II. 34–38.

*Claim 19:*

A method of controlling an automotive computer comprising the steps of:

providing control signals to an engine from a first computer, said control

signals comprising engine operating parameters;

providing at least one originally provided programmed mode for operating said engine from at least one originally provided memory coupled to said first computer;

communicating a superseding signal to a bus coupled to said first computer and said at least one originally provided memory through a diagnostic/emulation port or harness coupled to said bus from an adapter module, said superseding signal to alter control of said engine by said first computer; selectively controlling said engine by means of said first computer through at least one additional programmed mode provided by said adapter module, said additional programmed mode not being originally included in said originally provided memory.

'948 patent, col. 10, II. 15–36.

On March 6, 2002, the district court construed claims 1, 5, and 19 to include an "in transit" limitation based on language describing that feature in the specification of the '948 patent. Specifically, the district court cited a passage found in the patent's "Background of the Invention": "[T]he vehicle must be reconfigured in the field, *or possibly even when operating*, to switch between alternative fuels." '948 patent, col. 1, II. 65–67 (emphasis added). Based on this passage in the specification, the trial court concluded that the invention must adjust vehicle functions while the vehicle is in normal operation. In addition, the district court found support for this "in transit" limitation in the "Brief Summary of the Invention": "The operation of the vehicle is changed by the control *while the vehicle is in transit* and thereafter becomes controlled according to the additional program in the selected preprogrammed memory in lieu of the originally provided

program." '948 patent, col. 2, II. 42–46 (emphasis added). As noted, the district court concluded: "These two passages are convincing evidence that the invention claimed in the '948 patent requires that selection of the programs includes an 'in transit' limitation." Although the term "in transit" seems to refer to the vehicle traveling from one place to another, the district court clarified that "in transit" refers to the vehicle when "moving or stopped, but otherwise in normal operation."

Based on this construction of the claims, the parties consented to an entry of summary judgment. This appeal followed. This court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1) (2000).

## II.

This court reviews a district court's grant of summary judgment without deference. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed.Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). This court also reviews claim construction as a question of law without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc).

"In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.' 35 U.S.C. § 112, P 2." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed.Cir.2001). In the absence of an applicant's intent to impart a novel meaning to claim terms, those words take on the ordinary and customary meanings attributed to them by those of ordinary

skill in the art at the time of invention. *See, e.g., Teleflex,* 299 F.3d at 1325.

"The written description must be examined in every case, because it is relevant not only to aid in the claim construction analysis, but also to determine if the presumption of ordinary and customary meaning is rebutted." *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.,* 326 F.3d 1215, 1220 (Fed.Cir.2003) (citing *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed.Cir.1988)). Where the patentee, acting as his or her own lexicographer, has clearly defined the term differently from its ordinary and customary meaning, the presumption is rebutted. *See In re Paulsen,* 30 F.3d 1475, 1480 (Fed.Cir.1994); *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387–88 (Fed.Cir.1992). The presumption may also be rebutted by showing the inventor has disclaimed subject matter by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope. *See Teleflex,* 299 F.3d at 1324. "When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation." *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 980 (Fed.Cir.1999).

In this case, the relevant claim language says nothing about operation of the invention "in transit." In fact, the district court did not refer to claim language as an anchor for its "in transit" limitation. Rather than invoking claim language, the trial court proceeded directly to the specification. As noted, the district court read two passages in the patent to create the so-called "in transit" limitation. Without a single reference to the terms of any claim, the district court concluded that "the invention of the '948 patent" includes an "in transit" limitation, presumably applying that limitation to every claim of the patent. When the district court finally reached its analysis of the language in the claims, the district court did not link the "in transit" limitation to any words in the claims. Instead, the district court referenced its earlier conclusion about the invention in general in order to justify insertion of the "in transit" limitation.

For example, in reference to the phrase "said module for use in selecting at least one additional operational protocol not originally included within said fixed system design," the district court acknowledged its ordinary meaning. The district court interpreted this language to mean: "the externally coupled module is used to select a protocol in addition to the original protocol." However, without citing specific terms in that phrase, the district court referred to its earlier conclusion to state that "both an original and an additional program are present while the vehicle is in normal operation." A similar analysis was applied throughout the opinion with regard to phrases in claims 1, 5, and 19.

Hypertech argues that the district court's claim construction was proper because the prosecution histories of the '948 patent and its parent patents reveal that Mr. Adrain had imbued the terms "additional," "control," and "improvement in a vehicle" with the "in transit" meaning. According to Hypertech, those terms define the invention as allowing selection of the additional program to control the vehicle while the vehicle is moving or stopped, but otherwise in normal operation.

To the contrary, a review of the prosecution histories of the '948 patent's parent applications shows that the only words used to define the invention as being capable of operating while "in transit" or during "normal operation" are exactly those words. The evolution of claim 1 is illustra-

tive. Claim 1 of the '900 patent states, "operation of said vehicle being changed by said interactive control while said vehicle is *in transit.*" '900 patent, col. 8, II. 48–50 (emphasis added). Claim 1 of the '317 patent contains the same phrase with the exception of the term "interactive." '317 patent, col. 8, II. 46–48. In the '665 patent, Mr. Adrain amended that phrase to read, "operation of said vehicle being changed by said control while said vehicle is in *normal operation.*" '665 patent, col. 8, II. 46–48 (emphasis added). Mr. Adrain explained that the claim had been amended from its form in the '317 patent "to allow selection of the engine protocols even while the vehicle is not in transit, i.e. stopped, but otherwise in normal operation." Thus, the claims stated explicitly "in transit" and "normal operation" when the applicant meant to limit the invention to the "in transit" meaning at issue in this case, i.e., moving or stopped, but otherwise in normal operation. Although some claims of the '948 patent continue to use the terms "in transit," claims 1, 5, and 19 contain no such language.

This court also finds Hypertech's argument regarding the phrase "an improvement in a vehicle" to be misplaced. Hypertech references the history of that phrase to support a finding of an "in transit" or "normal operation" limitation. However, as explained earlier, the patent uses the words "in transit" or "normal operation" when it intends those limitations. The prosecution history of Mr. Adrain's patents shows that the phrase "improvement in a vehicle" carries its own meaning and is not relevant to whether the claims contain an "in transit" limitation.

Mr. Adrain's original claims referred to "an improvement in an apparatus." However, Mr. Adrain abandoned that original application and filed a continuation application, which eventually issued as the '900

patent. In the continuation application, the claim language was changed to read, "an improvement in a vehicle." In a first Office Action, the examiner cited the Marino patent (U.S. Patent No. 4,502,324) as prior art. In response, Mr. Adrain noted that "Marino is not an improvement in a vehicle, but a stationary piece of shop equipment."

This history suggests that the phrase "an improvement in a vehicle," which was carried through to claim 1 in the '948 patent, may require the invention to be incorporated within or retrofitted to the vehicle. The district court, however, rejected that proposition, and Hypertech did not argue that position here. Instead, Hypertech elected to accept the district court's rejection of its "improvement in a vehicle" argument. Accordingly, as Hypertech has not challenged that ground, this court does not address that issue at this time, other than to say that the "improvement in a vehicle" language does not support the finding of an "in transit" limitation.

In summary, the district court erred when it admittedly read the "in transit" limitation into the claims of the '948 patent. This court reverses the district court's conclusion that claims 1, 5, and 19 of the '948 patent contain an "in transit" limitation. Because the judgment of noninfringement was premised on the "in transit" claim construction issue, this court vacates that judgment and remands the case for further proceedings consistent with this opinion.