### PRO–TECH WELDING AND FABRICATION, INC., Plaintiff,

v.

### Thomas P. LAJUETT, both individually and doing business as R.C.S. SNO–PRO, et al., Defendants.

No. 02–CV–6232L.

United States District Court, W.D. New York.

April 13, 2005.

Donald W. O'Brien, Esq., Woods, Oviatt, Gilman LLP, Rochester, NY, and Duane C. Basch, Esq., Greenwald & Basch LLP, East Rochester, NY, for Plaintiff.

Gary J. Gianforti, Esq., Culley, Marks, Tanenbaum & Pezzulo, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Pro–Tech Welding and Fabrication, Inc. ("Pro–Tech"), commenced this action against three of its former employees and four corporations, alleging claims based on patent infringement, misappropriation of trade secrets, breach of contract, and other theories. Five of the defendants-Thomas P. LaJuett (both individually and d/b/a R.C.S. Sno–Pro), Gerald S. LaJuett, Steven Sepaniak, RCS Manufacturing and Development, LLC, and Rochester Custom Steel, Inc. (collectively "the moving defendants")-have moved for summary judgment dismissing all of plaintiff's claims against them, and granting judgment in favor of the moving defendants on their counterclaims against Pro–Tech. Pro–Tech has cross-moved for summary judgment dismissing the moving defendants' counterclaims.

## BACKGROUND

Pro–Tech is a New York corporation engaged in the manufacture and sale of a variety of types of metal equipment for application in various uses. One of its products is a snow removal device which has the trade name "Sno Pusher." The Sno Pusher is similar to a conventional snowplow, except that it is designed to push snow forward rather than off to one side. This type of device (sometimes referred to generically as a "snow pusher" or "box plow") has certain advantages over conventional plows in certain applications, such as removing snow from parking lots, where the presence of "side spill" from a conventional plow would required the snowplow operator to make more passes than would be required with a snow pusher.

Pro–Tech is also the owner of United States Patent No. 5,724,755 ("the '755 patent"), which claims a "snow pusher [that] includes a blade with horizontal and vertical reinforcing channels, a reversible and removable rubber edge fastened to the blade and extending below its bottom edge, and a side plate extending forward from each end of the blade." Pro–Tech alleges that defendants have infringed upon that patent by selling a snow pusher that incorporates all of the claimed elements of plaintiff's patented design.

In this action, Pro–Tech alleges, in short, that during their employment at Pro–Tech, defendants Thomas and Gerald LaJuett ("the LaJuetts") were privy to certain confidential information concerning Pro–Tech's manufacturing and marketing of the Sno Pusher, and that, in violation of their employment contracts, they set up a rival business under the name of "Rochester Custom Steel" ("RCS"). When it discovered what they had done, Pro–Tech fired the LaJuetts in May 2000.

Pro–Tech also alleges that defendant Steven Sepaniak, while employed in Pro–Tech's sales department, began working-at first surreptitiously and later overtly-with the LaJuetts, who by 2001 had begun marketing a snow pusher of their own, under the name "Sno–Pro." Because Sepaniak's activities, which allegedly included diverting customers from Pro–Tech to RCS, were allegedly in breach of his employment agreement, Pro–Tech fired him in 2001.

Pro–Tech alleges that by manufacturing and selling the Sno–Pro snow pusher, the moving defendants have infringed upon the '755 patent. Pro–Tech also alleges that defendants have misappropriated Pro–Tech's trade secrets, breached certain confidentiality and non-solicitation agreements that they had entered into with Pro–Tech, and committed various torts, such as breach of fiduciary duty, conversion, and tortious interference with contract.[1] In their counterclaims, defendants allege that Pro–Tech has interfered with defendants' relationships with their customers and suppliers, by threatening to sue or otherwise take action against those customers and suppliers if they continued doing business with RCS.

## DISCUSSION

Defendants make two arguments in support of their motion for summary judgment. First, defendants contend that there is no evidence of patent infringe-

---

1. Plaintiff's claims against the non-moving defendants (who are both snow removal equipment dealers) are based on those defendants' alleged retail sales of the Sno–Pro, in violation of their contractual obligations to Pro–Tech. Since plaintiff's claims against the non-moving defendants are not at issue with respect to the pending motions, the moving defendants will simply be referred to collectively as "defendants" for the remainder of this Decision and Order.

ment. Second, in the alternative, defendants contend that the '755 Patent is invalid as a matter of law for a number of reasons. Both arguments relate to the patent's claim of a "blade including a plurality of horizontal and vertical reinforcing channels on the back thereof ...". '755 Patent, Col. 3, Lines 4–5. In support of their contention that defendants' product does not infringe the patent in issue, defendants maintain that their Sno–Pro Pusher does not use vertical reinforcing channels, but rather "boxed gussets."

Concerning invalidity, defendants contend that the inventor of the invention claimed in the '755 Patent, Michael Weagley, a principal of Pro–Tech, did not disclose to the patent examiner two known items of prior art: that is, two other snow pushers that incorporated nearly all of the elements set forth in the listed claims of the '755 Patent, including the use of reinforcing channels.

I turn first to the question of infringement. If plaintiffs have failed to establish patent infringement, then there is no need to explore issues relating to the patent's validity.

## I. Patent Infringement

### A. General Principles

A determination of patent infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir.1993). "In order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed.Cir.1994).

The first step, then, is to construe any disputed claim terms. In a pat-

ent infringement case that is to be tried to a jury, it is the court's task to construe the claims of the patent. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–91, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *see also Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1370 (Fed.Cir.) ("claim construction ... is a question of law"), *cert. denied*, 540 U.S. 1073, 124 S.Ct. 922, 157 L.Ed.2d 742 (2003). In determining the meaning of disputed terms, the court should look first to the language of the claims themselves. *Bell & Howell Document Mgmt. Prod. Co. v. Altek Sys.*, 132 F.3d 701, 705 (Fed.Cir.1997); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). There is a "strong presumption" that the words of the claims should be given their ordinary and customary meaning as understood by one of ordinary skill in the art, unless the patent or its file history makes clear that a particular special definition is intended. *Apex*, 325 F.3d at 1371; *K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362–63 (Fed.Cir. 1999); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed.Cir. 1998); *Vitronics*, 90 F.3d at 1582; *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed.Cir.), *cert. denied*, 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996). "Additionally, dictionary definitions may be consulted in establishing a claim term's ordinary meaning." *Apex*, 325 F.3d at 1371.

"[S]econd, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics*, 90 F.3d at 1582; *Markman*, 52 F.3d at 979. Because the specification contains a written description of the invention which must be

clear and complete enough to enable those of ordinary skill in the art to practice the invention, the specification "is the single best guide to the meaning of a disputed term." *Vitronics,* 90 F.3d at 1582.

■ "Third, the court may also consider the prosecution history of the patent, if in evidence." *Id.* The Federal Circuit has described the prosecution history as "often of critical significance in determining the meaning of the claims." *Id.* (citing *Markman,* 52 F.3d at 980).

■ If this "intrinsic" evidence, *i.e.* the claims, the specification, and the prosecution history, is unambiguous, the court may not look to other, extrinsic evidence. *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 976–77 (Fed.Cir.1999), *cert. denied,* 529 U.S. 1066, 120 S.Ct. 1672, 146 L.Ed.2d 482 (2000); *Pitney Bowes, Inc., v. Hewlett–Packard Co.,* 182 F.3d 1298, 1308–9 (Fed.Cir.1999); *Vitronics,* 90 F.3d at 1583. Extrinsic evidence is that evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles. *Vitronics,* 90 F.3d at 1584. The court may receive extrinsic evidence to educate itself about the invention and the relevant technology, but it may not use extrinsic evidence to arrive at a claim construction that is clearly at odds with the construction dictated by the intrinsic evidence. *See Goldenberg v. Cytogen, Inc.,* 373 F.3d 1158, 1164 (Fed.Cir.2004) (extrinsic evidence "may not be used to vary the meaning disclosed by the patent itself"); *accord Altiris, Inc. v. Symantec Corp.,* 318 F.3d 1363, 1369 (Fed.Cir.2003); *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed.Cir.1998). Extrinsic evidence, then, may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language.

## B. Application to this Case

Before the Court construes the relevant claim language in this case, some further understanding of the similarities and differences between Pro–Tech's Sno Pusher and defendants' Sno–Pro is needed. There is no real dispute here that plaintiff's Sno Pusher does use horizontal and vertical channels to provide added strength to the blade. The real issue, with respect to infringement at least, is whether the term "vertical channel," as used in the '755 patent, is broad enough to include defendants' "boxed gusset" design. Is defendants' design such that it utilizes channels?

As illustrated in Figure 4 of the '755 patent, there are three horizontal channels (designated "11" in Figure 4 of the patent, which is attached as Exhibit A to this Decision and Order) running across the back of the blade, and three vertical channels ("12") between the horizontal channels. The patent states that all the channels are welded to the blade. '755 Patent col. 2 line 37.

According to defendants, their Sno–Pro design does *not* utilize vertical reinforcing channels, but rather "boxed gussets."[2] A gusset, in general, is a flat, usually angled piece of metal used for strengthening a structure.[3] Defendants' expert, Ronald N. Salzman, who holds a doctorate in Mechanical Engineering, describes a boxed gusset as "a double gusset with a plate welded

---

**2.** Defendants concede that they use horizontal channels. *See* Salzman Aff. (Dkt.# 56) ¶ 5(F).

**3.** The Merriam–Webster Online Dictionary (*http://m-w.com* ) defines "gusset" as "a plate or bracket for strengthening an angle in

framework (as in a building or bridge)." The Oxford English Dictionary (*http://oed.com* ) defines gusset as a " 'bracket' or angular piece of iron fixed at the angles of a structure to give strength or firmness."

between." Salzman Aff. (Dkt.# 56) ¶ 5(F). A critical issue in this case is whether defendants' boxed gusset constitutes a "channel" as that term is used in the '755 patent.

The relevant claim language of the '755 patent states that it claims "an upstanding transverse blade with a front, back, and bottom, said blade including a plurality of horizontal and vertical reinforcing channels on the back thereof . . . ." The claims themselves give no further explanation of what is meant by "channel." The specification also gives no definition of "channel," though it does state that "[w]elded straight channels are inherently stronger and not prone to failure by buckling, as compared to typical prior art vertical curved ribs cut from steel plate." '755 Patent col. 2 lines 38–41.

The claims do, however, appear to draw a distinction between a "channel" and a "gusset." In addition to claiming " a plurality of horizontal and vertical reinforcing channels on the back" of the blade, Claim 1 claims "a horizontal backing member with a plurality of vertical gussets mounted on said blade along and behind the bottom thereof." '755 Patent col. 3 lines 21–26.

The Merriam–Webster Online Dictionary (*http://m-w.com*) gives several definitions for the word "channel," the most apt of which is "a long gutter, groove, or furrow; a metal bar of flattened U-shaped section." Similarly, the Oxford English Dictionary (*http://oed.com*) defines "channel" as a "lengthened groove or furrow on any surface," and also states that "channel" can be "[s]hort for channel bar," which is defined as "an iron bar or beam flanged to form a channel on one side." Those definitions do aptly describe the channels shown in Figure 4 of the '755 patent, which appear to be long pieces of metal with a bracket-shaped ("[]") cross-section.

Plaintiff's expert, James B. Taylor, who holds a doctorate in Industrial Engineering, opines that "the 'boxed gusset' utilized by the defendants is a vertical channel as it comprises all of the elements one of ordinary skill in the art at the time of the invention would have understood (i.e., a pair of sides or flanges connected to and extending in parallel from a web)." Taylor Aff. (Dkt.# 71) ¶ 16. He states that the fact that defendants' boxed gusset has triangular rather than rectangular sides is immaterial, because "all cross sections of the [boxed gusset] channel are "U" shaped . . . ." *Id.* ¶ 14.

Salzman, on the other hand, states in his affidavit that a boxed gusset is not the same thing as a channel. He opines that "channels are hot-rolled factory made structural steel shapes" that are "identified as 'C', 'MC', or 'U' shapes in the art." Salzman Aff. ¶¶ 5(E), 5(F). He adds that a "gusset . . . is a piece of steel plate used as a reinforcement to provide stiffening," and that "welding a plate between two gussets does not create a channel." *Id.* ¶ 5(F).

Based simply on the claim language and the ordinary meaning of the term "channel," it is not immediately apparent whether "channel" should be construed to include a "boxed gusset." Given its commonly understood meaning, the term "channel" would not generally bring to mind an object with triangular sides. At the same time, though, it does seem that one could construct a channel by welding three metal plates together to form a U or bracket shape.

■ As stated, however, the third category of intrinsic evidence that a court may consider is the prosecution history, which "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regard-

ing the scope of the claims." *Vitronics*, 90 F.3d at 1582. Based upon the prosecution history of the '755 patent, I conclude that the term "channel," as used in the patent, does not include a "boxed gusset."

 "[E]ven where the claim language is not ambiguous, '[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.'" *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304, 1313 (Fed.Cir.2002) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995)). "Thus, the prosecution history limits even clear claim language so as to exclude any interpretation that was surrendered during prosecution, but only where the accused infringer can demonstrate that the patentee surrendered that interpretation 'with reasonable clarity and deliberateness.'" *Id.* (quoting *Pall Corp. v. PTI Techs., Inc.*, 259 F.3d 1383, 1393 (Fed.Cir.2001), *vacated on other grounds sub nom. PTI Techs., Inc. v. Pall Corp.*, 535 U.S. 1109, 122 S.Ct. 2324, 153 L.Ed.2d 152 (2002)) (additional internal quotes omitted).

The inventor, Michael Weagley, submitted a patent application for a snow pusher on October 28, 1996. *See* Basch Aff. (Dkt.# 70) Ex. I. Claims 1 and 2 of the application stated in part that Weagley claimed a snow pusher with "an upstanding transverse blade including a plurality of horizontal and vertical reinforcing channels on the back thereof ...." *Id.* 5, 6.

On May 12, 1997, the examiner rejected Claims 1 and 2, in part on grounds of obviousness. In particular, the examiner stated that an existing patent ("Goldberg") "shows a snowplow having a transverse blade with vertical channels ... but does not show horizontal channels." He also stated that another patent ("Meyer") "shows a snow plow blade with a rubber edge having horizontal channels ...." Basch Aff. Ex. I at 22. He then stated that "[i]t would have been obvious to one of ordinary skill in the art to modify Goldberg to include horizontal channels as taught by Meyer to improve the strength of the blade with these reinforcement members." *Id.*

In response to that decision, Weagley submitted an amended application on August 13, 1997. In support of the amended application, Weagley stated that the patent examiner's reference to Goldberg as a patent for a snowplow blade with vertical channels on its back "is a misperception. Goldberg's 'angle bars' ... are not channels." Basch Aff. Ex. I at 30. Similarly, Weagley asserted that the examiner's description of the Meyer plow as having horizontal channels on its back was also a "misperception. Meyer's angle irons ... are not channels. The applicant's [*i.e.* Weagley's] channels give strength and rigidity to the blade structure, and for this purpose, channels are greatly superior to angles." *Id.*

On September 8, 1997, the Patent and Trademark Office allowed the amended application. In his reasons for allowance, the examiner stated that "[t]he prior art of record fails to show or suggest a snows [sic] pusher that includes a blade having vertical and horizontal reinforcing *channels* ...." Gianforti Aff. Ex. J at 3 (emphasis in original). The examiner, then, apparently agreed with Weagley that the reinforcing structures disclosed by the Goldberg and Meyer patents were not "channels."

It appears clear then that during the prosecution of the patent application, Weagley expressly *limited* the scope of the term "channel" in order to avoid rejection of the application based on prior art. Although the prior art apparently did not employ boxed gussets, Weagley made

clear that he did not intend the term "reinforcing channels" to include *all* types of reinforcing structures on the back of the plow blade.[4] Weagley apparently did this in order to avoid prior art, *i.e.* Goldberg and Meyer.

Plaintiff cannot obtain here what it abandoned during prosecution of the patent. "Claims that have been narrowed in order to obtain issuance over the prior art cannot later be interpreted to cover that which was previously disclaimed during prosecution." *Elekta Instrument S.A. v. O.U.R. Scientific Intern., Inc.*, 214 F.3d 1302, 1308 (Fed.Cir.2000) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)). *See also Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers"); *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1206 (Fed.Cir.1992) ("Prosecution history is especially important when the invention involves a crowded art field, or when there is particular prior art that the applicant is trying to distinguish"), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 976, 122 L.Ed.2d 131 (1993); *Advance Transformer Co. v. Levinson*, 837 F.2d 1081, 1083 (Fed. Cir.1988) ("Positions taken in order to obtain allowance of an applicant's claims are pertinent to an understanding and interpretation of the claims that are granted by the PTO, and may work an estoppel as against a subsequent different or broader interpretation").

I am aware that the Court should "consider[ ] the prosecution history ... to determine whether the applicant clearly and unambiguously 'disclaimed or disavowed [any interpretation] during prosecution in order to obtain claim allowance.'" *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed.Cir.2002) (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed.Cir.1985)). I also recognize that Weagley did not expressly distinguish channels from "boxed gussets," since neither the Goldberg nor Meyer patent employed boxed gussets. Nonetheless, Weagley did make clear that the term "channel," as used in the patent application, was not meant to include all reinforcing mechanisms.

I also note that it appears from the '755 patent itself that this is a "crowded art field," which makes prosecution history "especially important ...." *Lemelson*, 968 F.2d at 1206. The patent states that "[s]now pushers of various configurations are presently known," and that "[t]hey are typically characterized by one or more of the following: a relatively complex mounting arrangement, a steel blade as the snow scraper, a relatively light construction backed with ribs and angles." '755 patent, col. 1, lines 9–13. The patent examiner's initial rejection of the patent application on grounds of obviousness also suggests that the field is a crowded one. The '755 patent may represent some improvement over prior art, but it seems clear that the patentee was not striking out into virgin territory.

---

4. The Goldberg patent claims, *inter alia*, a plow assembly "comprising a rigid moldboard" with an attached blade, that "has a plurality of spaced angle bars" on the back of the moldboard for securing it to a carrying frame. Gianforti Aff. Ex. E, col. 3 lines 9–10.

Despite Weagley's reference to "Meyer's angle irons," the Meyer patent does not appear to use that term. Rather, it calls for "[v]ertical supports" that "extend along the back of the blade," and "[t]ransverse supports extend[ing] transversely across the back of the blade to combine with the vertical support for rigifying the body portion." Gianforti Aff. Ex. F, col. 5 lines 1–6.

Plaintiff's expert, Dr. Taylor, opined that a person of ordinary skill in the art would understand the term "channel" to mean "a mechanical structure with a U-shaped cross section," and that "a channel includes a pair of parallel sides or flanges . . . that extend from the edges of a web or back . . . in a direction generally perpendicular to the web." Taylor Aff. ¶ 13. He also states that "[d]epending upon the orientation of the channel as described in the '755 patent, the sides or flanges would either lie parallel with a generally horizontal plane (horizontal channels) or in a generally vertical plane (vertical channels), and could be curved so as to enable welding to the rear surface of the curved pusher blade." *Id.*

Based on that construction of "channel," Taylor further opines that a "simple observation of the cross-section of [defendants'] 'boxed gusset' clearly shows it to be a channel," because "all cross sections of the channel are 'U' shaped." *Id.* ¶ 14. I am not persuaded by that reasoning. Focusing solely on the cross-section, and ignoring the other attributes of the defendants' design seems unwarranted. Likewise, Taylor states that "the non-rectangular nature of the side flanges [of defendants' boxed-gusset design] is not a distinguishing feature as all cross sections of the channel are 'U' shaped," but he offers no real reason *why* the boxed gusset's U-shaped cross-section renders its triangular sides "not a distinguishing feature."

■ After considering the relevant evidence and opinions of the parties' experts, I believe that the triangular shape of the sides of defendants' boxed gusset design *is* significant, and that it does not create a "channel" as that term is used in the '755 patent. The vertical channels depicted in the '755 patent have a curved back that parallels the curvature of the snow pusher blade, so that the channel has a uniform depth throughout. Defendants' design, on the other hand, uses pairs of triangular-shaped gussets with a metal plate welded between them. The back of this "boxed gusset," *i.e.*, where the connecting plate is located, is not curved, nor does it follow the shape of the blade, but rather slants at a downward angle from near the top of the back of the pusher blade to the horizontal posts that connect the blade to a vehicle. Thus, while the backs of plaintiff's vertical channels run parallel to the back of the blade, the back of defendants' boxed gusset runs from near the top of the back of the blade to a point some distance from the blade, near the connecting mechanism. Such a structure does not call to mind a "groove" or "furrow," which, as stated, is the commonly understood meaning of "channel."

Another difference between the two designs is that, although any given cross-section of the boxed gusset might indeed be U-shaped, the depth of the cross-section would vary depending on where the cross-section was taken. The depth would be greatest at a cross-section bisecting the boxed gusset, and smallest at a cross-section near either end of the connecting plate. A cross-section of one of plaintiff's channels, however, would be the same at any point along its length.

In accordance with the commonly understood meaning of the term "channel," and in light of the prosecution history, I therefore conclude that, as used in the '755 patent, "vertical channel" refers to a structure with a U- or bracket-shaped cross-section that runs vertically down the back of the plow blade, and which generally conforms throughout its length to the shape or curvature of the back of the blade. It does not, then, include a so-called "boxed gusset," with a back that does not conform to the blade's shape, but rather slopes at a downward angle away from the top of the blade.

## C. Doctrine of Equivalents

■ Plaintiff also contends that, even if defendants' design does not literally infringe the '755 patent claims, it still should be found to infringe under the doctrine of equivalents. "Infringement under the doctrine of equivalents occurs when a claimed limitation and the accused product perform substantially the same function in substantially the same way to obtain substantially the same result." *V–Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed.Cir.2005) (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)); *accord Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1374 (Fed.Cir.2005). The "essential inquiry" is whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention[.]" *Warner–Jenkinson*, 520 U.S. at 40, 117 S.Ct. 1040.

■ "Infringement under the doctrine of equivalents requires that any difference between the claim elements at issue and the corresponding elements of the accused product be insubstantial." *Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1312 (Fed.Cir. 2004) (citing *Warner–Jenkinson*, 520 U.S. at 39–40, 117 S.Ct. 1040). The doctrine should not be applied so broadly as to "erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed.Cir. 1997) (quoting *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed.Cir. 1994)). Like literal infringement, infringement under the doctrine of equivalents presents a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir. 1998). Summary judgment may therefore be granted only "if the record contains no genuine issue of material fact and leaves no room for a reasonable jury to find equivalence." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed.Cir.2002).

Plaintiff's expert states that defendants' "boxed gusset is . . . utilizing a substantially similar mechanical structure to perform the reinforcement function intended by the recited vertical channel in claims 1 and 2 of the '755 patent, to achieve the same result of providing reinforcement to the back side of the blade and between the horizontal channels." Dkt. # 71 ¶ 17. He adds that "the 'boxed gusset' has a mechanical structure identical to a channel (parallel sides or flanges with a web spanning therebetween), that is similarly welded to the rear of the blade between the horizontal channels, resulting in reinforcement and improved rigidity of the snow pusher as was the function of the vertical channels in the '755 patent." *Id.*

In response, defendants rely on the doctrine of prosecution history estoppel, which "may bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed.Cir.2004) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733–34, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002)), *petition for cert. filed*, 73 U.S.L.W. 3146 (U.S. Aug. 31, 2004) (No. 04–293).

■ As the Supreme Court has explained, the theory behind this doctrine is that:

[w]hen . . . the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent . . . . [H]is

decision to ... submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim.

*Festo*, 535 U.S. at 733–34, 122 S.Ct. 1831. Unlike the doctrine of equivalents, "[p]rosecution history estoppel as a limit on the doctrine of equivalents presents a question of law." *Glaxo Wellcome, Inc. v. Impax Labs., Inc.*, 356 F.3d 1348, 1351 (Fed.Cir. 2004) (quoting *Wang Labs., Inc. v. Mitsubishi Elecs. America, Inc.*, 103 F.3d 1571, 1578 (Fed.Cir.), *cert. denied*, 522 U.S. 818, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997)).

■ "There are two distinct theories that fall under the penumbra of prosecution history estoppel-amendment-based estoppel and argument-based estoppel." *Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1324 (Fed.Cir.2003). Amendment-based "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patents scope." *Festo*, 535 U.S. at 736, 122 S.Ct. 1831. "The scope of the estoppel depends on 'the inferences that may reasonably be drawn from the amendment.'" *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1350 (Fed.Cir.2002) (quoting *Festo*, 535 U.S. at 737–38, 122 S.Ct. 1831). *See also Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1357 (Fed. Cir.2003) (describing amendment of claim to avoid prior art as "the classic basis for the application of prosecution history estoppel").

Argument-based estoppel can arise if the patentee "relinquished [a] potential claim construction ... in an argument to overcome or distinguish a reference." *Elkay Mfg.*, 192 F.3d at 979. *See also Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1350 (Fed.Cir.2002) ("An estoppel also may be found on the basis of arguments made during prosecution of the application to secure the allowance of

claims"). "To invoke argument-based estoppel, the prosecution history must evince a 'clear and unmistakable surrender of subject matter.'" *Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*, 305 F.3d 1303, 1316 (Fed.Cir.2002) (quoting *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1376–77 (Fed.Cir.1999)).

■ As previously explained, Weagley responded to the patent examiner's initial rejection of his application by submitting an amended application. The amended application did not amend the claim language concerning channels, however. Rather, Weagley argued to the patent examiner that channels were distinguishable from other types of reinforcement devices such as angle irons or bars. He therefore disavowed any contention that such devices were equivalent to channels.

Again, I recognize that Weagley did not (and had no occasion to) expressly distinguish his "channels" from "boxed gussets." He did, however, contend that channels were different from other types of reinforcing structures, and plaintiff should not now be allowed to broaden the scope of the claims in order to cover a broad range of equivalent products. If the patent were read to cover, under the doctrine of equivalents, any structure attached to the back of the blade in order to reinforce it, the patent would cover the very prior art that Weagley sought to distinguish in his amended application.

This is particularly so because the '755 patent is clearly not a "pioneer" patent, *i.e.*, a patent for a "broad breakthrough invention." *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 987 (Fed.Cir.1989). Such an invention "merits a broader scope of equivalents than does a narrow improvement in a crowded technology." *Id.; see also Augustine Med., Inc. v. Gaymar Indus., Inc.*,

181 F.3d 1291, 1301 (Fed.Cir.1999) ("Without extensive prior art to confine and cabin their claims, pioneers acquire broader claims than non-pioneers who must craft narrow claims to evade the strictures of a crowded art field"). As noted earlier, the use of vertical reinforcing structures appears to have been common in the field of snowplow or snow pusher design at the time of Weagley's patent application, and it is obvious from the patent that he viewed his design as an improvement over the "[s]now pushers of various configurations" that were already known to him. '755 Patent, col. 1, line 9. *See also* '755 Patent, col. 1, line 18 (noting that one object of claimed invention was "improved strength of construction"). "The patentee bears the burden of overcoming the presumption by 'showing that the amendment does not surrender the particular equivalent in question,'" *Allen Eng'g,* 299 F.3d at 1350 (quoting *Festo,* 535 U.S. at 725, 122 S.Ct. 1831), and I conclude that plaintiff has failed to do so.

## II. Remaining Claims

In their answer, defendants have asserted several affirmative defenses alleging that the '755 patent is invalid, on various grounds. In their motion, defendants also ask the Court to declare the patent invalid. My finding of noninfringement, however, renders it unnecessary for the Court to consider defendants' invalidity arguments. *See Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.,* 322 F.3d 1335, 1346 (Fed.Cir.2003) (declining to reach validity issues "because we have affirmed the trial court's grant of summary judgment of non-infringement and because invalidity was raised below merely as an affirmative defense to infringement"); *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,* 318 F.3d 1143, 1152–53 (Fed.Cir.2003) (same); *see also Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 93, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (holding that an appellate court's affirmance of a finding of non-infringement is not *per se* a sufficient reason for vacating a declaratory judgment holding the patent invalid, but distinguishing between "[a]n unnecessary ruling on an affirmative defense" and "the necessary resolution of a counterclaim for a declaratory judgment").

In addition, both sides have asserted claims against each other under state law for unfair competition, breach of contract, etc. The Second Circuit has stated that, in general, "if [all] federal claims are dismissed before trial ..., the state claims should be dismissed as well." *Castellano v. Board of Trustees,* 937 F.2d 752, 758 (2d Cir.1991) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *accord Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir.2001); *see also Sadallah v. City of Utica,* 383 F.3d 34, 40 (2d Cir.2004) ("because plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court"). All of the parties' state law claims are therefore dismissed without prejudice to refiling in state court.

Lastly, plaintiff has asserted certain claims against the non-moving defendants, Westchester Machinery & Supply Co., Inc., and J & S Truck and Equipment Sales and Service. The moving defendants have also asserted a cross-claim against the non-moving defendants for contribution and indemnity.

The Court has been informed by counsel for both plaintiffs and the non-moving defendants that they have reached a settlement of plaintiffs' claims against the non-moving defendants. Those claims are therefore dismissed. The moving defendants' cross-claims against the non-moving defendants are dismissed as moot.

## CONCLUSION

The motion for summary judgment (Dkt.# 48) filed by defendants Thomas P. Lajuett (both individually and d/b/a R.C.S. Sno–Pro), Gerald S. LaJuett, Steven Sepaniak, RCS Manufacturing and Development, LLC, and Rochester Custom Steel, Inc. ("the moving defendants") is granted in part and denied in part. Counts I and II of the Complaint (Dkt.# 41) are dismissed with prejudice. The remaining counts (Counts III through XIV) are dismissed without prejudice. In all other respects, defendants' motion is denied.

The moving defendants' counterclaims are dismissed without prejudice to refiling in state court. Plaintiff's cross-motion for partial summary judgment (Dkt.# 59) is denied as moot.

Pursuant to the parties' settlement agreement, plaintiffs' claims against defendants Westchester Machinery & Supply Co., Inc., and J & S Truck and Equipment Sales and Service ("the non-moving defendants") are dismissed with prejudice. The moving defendants' cross-claim against the moving defendants is dismissed as moot.

IT IS SO ORDERED.